IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PATSY SHOUP,
                                            :
          Plaintiff,

     v.                                     :     Case No. 3:14-cv-248

ROBERT A. MCDONALD,                               JUDGE WALTER H. RICE
SECRETARY OF VETERANS
AFFAIRS,                                     :

          Defendant.

---

DECISION AND ENTRY SUSTAINING IN PART AND NOT RULING
UPON IN PART DEFENDANT ROBERT A. MCDONALD, SECRETARY
OF VETERANS AFFAIRS'S MOTION FOR SUMMARY JUDGMENT
(DOC. #15); DEFENDANT'S MOTION IS SUSTAINED WITH RESPECT
TO PLAINTIFF'S CLAIMS FOR DISCRIMINATION (COUNT I) AND
RETALIATION (COUNT II) EXCEPT TO THE EXTENT THAT SUCH
CLAIMS ARISE FROM ALLEGED CONSTRUCTIVE DISCHARGE;
JUDGMENT SHALL ULTIMATELY ENTER IN FAVOR OF DEFENDAMT
AND AGAINST PLAINTIFF ON COUNTS I AND II, EXCEPT TO THE
EXTENT THAT THOSE CLAIMS ARISE FROM ALLEGED
CONSTRUCTIVE DISCHARGE; PLAINTIFF IS ORDERED TO SHOW
CAUSE WITHIN TWENTY-ONE (21) DAYS AS TO WHY REMAINDER
OF HER CLAIMS SHOULD NOT BE DISMISSED WITH PREJUDICE
FOR LACK OF SUBJECT MATTER JURISDICTION; DEFENDANT MAY
FILE A RESPONSE WITHIN FOURTEEN (14) DAYS THEREAFTER

---

Plaintiff Patsy Shoup ("Plaintiff" or "Shoup"), a disabled former employee of

Defendant Robert A. McDonald, Secretary of Veterans Affairs ("Defendant"), alleged

that Defendant discriminated against her on the basis of her disability (Count I) and

retaliated against her for engaging in protected activity (Count II).  Plaintiff claimed that

actions taken by her supervisor, Mark Frazee ("Frazee"), and her alleged *de facto*

supervisor, Carolyn Crawford ("Crawford"), were "predicated on her known disability."

Doc. #1, ¶ 16, PAGEID #3. Plaintiff has brought her claims under the Rehabilitation Act of 1973 ("Rehabilitation Act"). 29 U.S.C. § 701, *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Defendant has filed a motion for summary judgment. Doc. #15. For the reasons set forth below, Defendant's motion is SUSTAINED IN PART, and not ruled upon in part.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff worked at the Dayton, Ohio, Veterans Affairs Medical Center ("Dayton VA") continuously from 1990 until March, 2014. Doc. #17, PAGEID #189-90. During her tenure at the Dayton VA, Plaintiff was never terminated, suspended or subjected to any disciplinary action. Doc. #15-2, ¶ 5, PAGEID #126. In May, 2008, Plaintiff was promoted to the position of Program Support Assistant, a GS-6/8 position. Doc. #15, PAGEID #65 (citing Doc. #23-1, PAGEID #265). Her tasks included handling "correspondence, supplies, timekeeping, files, [and] a lot of computer work." Doc. #23-1 PAGEID #264. In that role, she reported directly to Frazee, Chief of the Voluntary Service Department. Doc. #15-6, PAGEID #186. Plaintiff's timekeeping duties were supervised in part by Crawford, the Dayton VA's Voluntary Service Specialist, even though Crawford was not officially her supervisor.[1] Doc. #15-6, PAGEID #186; Doc. #23-1, PAGEID #260-61.

---

[1] When other courts have faced a situation, like in this case, where there is "a question of fact as to whether an individual exercised authority over plaintiff 'tantamount to that of a supervisor's authority such that he could be considered her 'de facto' supervisor,' the court assumed for the purpose of deciding the motion [for summary judgment] that the individual was in fact a supervisor." *Edwards v. Town of Huntington*, No. 05-CV-339 (NGG)(AKT), 2007 WL 2027913, at *6 (E.D.N.Y. Jul. 11, 2007) (quoting *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 288-289 (S.D.N.Y.1999)). The Court assumes, for the purposes of this motion, that Crawford was Plaintiff's de facto supervisor, such that Crawford's actions, if adverse, could constitute adverse actions by Defendant.

Shortly after beginning as a Program Support Assistant, Frazee and Crawford allegedly subjected Plaintiff to constant harassment. The harassment included "backstabbing, criticizing, . . . [and] damaging conversations." Doc. #23-1, PAGEID #259. Plaintiff testified that she was forced to perform some of the tasks of a Voluntary Service Specialist, which is "a GS-11 level. I was a GS-6. And when I would question my duties, then my supervisor would pull them away from me. . . . [T]here was a great inconsistency in my work." *Id*.

In October, 2010, Plaintiff and her family suffered a home invasion, in which Plaintiff suffered head trauma and was knocked unconscious. Doc. #17, PAGEID #190. Plaintiff was subsequently diagnosed with post-traumatic stress disorder ("PTSD"), which worsened Plaintiff's previous problems with Frazee and Crawford. *Id*. (citing Doc. #17-1, PAGEID #201-04). On March 6, 2013, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging four main incidents of disability discrimination:

1. <u>April, 2010</u>: Frazee placed his arm around Plaintiff's shoulder and told a co-worker that he had to counsel Plaintiff about arriving to work late, which was not true;

2. <u>October 10, 2011</u>: Crawford said, loudly enough for others to hear, that Plaintiff had a drinking problem. Crawford repeated her comment to Frazee, who failed to intervene or stop Crawford from repeating those comments;

3. <u>October, 2012</u>: In Plaintiff's presence, Crawford and Frazee joked that they had gotten Rhonda Cox, Plaintiff's predecessor as Program Support Assistant, fired; and

4. <u>November 2, 2012</u>: Crawford improperly assigned Plaintiff's timekeeping duties to Kenny Spann ("Spann"), a nondisabled employee who was the Voluntary Service department's backup timekeeper. Plaintiff was admitted to the Dayton VA emergency room ("Emergency Room") as a result of acute stress from the incident.

Doc. #1-1, PAGEID #8-9, 14.[2]

While Plaintiff was being treated in the Emergency Room, Frazee allegedly sent text messages to Plaintiff, informing her that she would be considered absent without leave ("AWOL"), if she did not return to work. Doc. #17, PAGEID #194 (citing Doc. #23-1, PAGEID #288-90). After her hospitalization, Plaintiff was diagnosed with acute work-related stress and took leave, pursuant to the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, until February, 2013. *Id.*, PAGEID #194-95. Plaintiff's leave was partially paid and partially unpaid. Doc. #23-4, PAGEID #313. During Plaintiff's FMLA leave, she requested a transfer away from Frazee's supervision, but Brooke Harris ("Harris") and Michelle Reed ("Reed"), Dayton VA human resources department employees, denied her request.[3] Doc. #17, PAGEID #195 (citing Doc. #17-3, PAGEID #206-08).

In September, 2013, Crawford announced her intention to retire from the Dayton VA, Doc. #23-4, PAGEID #310, and she did so on February 22, 2014. Doc. #15-2, ¶2, PAGEID #125; Doc. #17, PAGEID #196. Frazee allegedly had promised Plaintiff that she would be promoted to Crawford's position upon the latter's retirement, although Plaintiff would still have to apply for the position. Doc. #17, PAGEID #196-97; Doc. #19-1, PAGEID #224. However, nobody within the Dayton VA "posted" the position, and

---

[2] The Court notes that the dates listed for particular incidents may be different in the EEOC decision, Defendant's motion or reply in support or Plaintiff's memorandum in opposition. The dates listed in this entry are derived from the Court's reading of the entire record. The dates of the incidents, however, do not impact the Court's ruling.

[3] Plaintiff, in her memorandum in opposition to Defendant's motion, did not cite to evidence of record that Harris or Reed had decision-making authority with respect to transfer requests. However, Defendant, in his reply memorandum, did not contend that Harris or Reed lacked such authority. Thus, the Court assumes, for the purposes of this motion, that Harris and Reed had authority to bind Defendant on that particular personnel decision.

applications were never accepted. Doc. #23-1, PAGEID #266. Frazee was transferred
to a different Department of Veterans Affairs hospital as of March 22, 2014, Doc. #15-2,
¶ 3, PAGEID #126, and Kimberly Frisco ("Frisco") replaced Frazee as the Dayton VA's
Chief of Voluntary Service. Doc. #17, PAGEID #196. Plaintiff claimed that Frisco, who
assumed Frazee's job responsibilities prior to his transfer, "continued the hostility and
the abuse" that she had suffered while working under Frazee and Crawford. Doc. #23-
1, PAGEID #267. Frazee later indicated to a co-worker that he thought Frisco "was
driving [Plaintiff] off the edge." Doc. #17-4, PAGEID #209. Plaintiff retired from the
Dayton VA effective March 29, 2014, although her last day of work was March 21, 2014.
Doc. #15-2, ¶ 4, PAGEID #126; Doc. #17, PAGEID #196.

On April 28, 2014, the EEOC concluded that Plaintiff "fail[ed] to demonstrate by a
preponderance of the evidence that she was discriminated against as alleged." Doc.
#1-1, PAGEID #15. Plaintiff filed this lawsuit on July 30, 2014. Doc. #1.


## II.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a). Summary judgment must be entered "against a
party who fails to make a showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear the burden of proof at
trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265
(1986). The moving party always bears the initial responsibility of informing the court of
the basis for its motion, and identifying those portions of the record which it believes

demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56 requires the nonmoving party to go beyond the pleadings and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure Civil 3d*, 2726 (1998).

6

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). However, if it so chooses, the court may consider other properly presented materials in the record. Fed. R. Civ. P. 56(c)(3).

## B.    Rehabilitation Act

The Rehabilitation Act prohibits government agencies from discriminating against their employees on the basis of a disability. 29 U.S.C. § 794(a). As Plaintiff has attempted to prove discrimination through circumstantial evidence, the Court applies the same burden-shifting framework that it applies in cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. Jones v. Potter*, 488 F.3d 397, 403-04 (6th Cir. 2007) (citing *Texas Dep't of Comm'y Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under this framework, Plaintiff bears the initial burden to show that she:

> 1) is disabled; 2) [was] otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 2004), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S.Ct. 2343, 174 L.Ed.2d 119

(2009). Element five may be met by showing that "similarly situated non-protected employees were treated more favorably." *Jones*, 488 F.3d at 404. If Plaintiff makes that *prima facie* showing, then the burden shifts to Defendant to "articulate a legitimate, nondiscriminatory reason for the challenged employment decision." *Id*. If Defendant makes that modest showing, then the burden shifts back to Plaintiff to show that Defendant's proffered reason was mere pretext for his true, discriminatory intent. *Id*.

The Rehabilitation Act also prohibits government agencies from retaliating against disabled employees who have undertaken protected activity. Retaliation claims are analyzed under a burden-shifting framework as well. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). To meet her *prima facie* burden on a retaliation claim, Plaintiff must show that: 1) she engaged in protected conduct; 2) Defendant knew she had engaged in such conduct; 3) Plaintiff suffered an adverse employment action; and 4) absent Plaintiff engaging in protected conduct, Defendant would not have taken the adverse employment action. *Id*.; *Lutz v. Donahoe*, No. 13-CV-11335, 2014 WL 2218042, at *4 (E.D. Mich. May 29, 2014) (plaintiff must show "but-for" causation in a Rehabilitation Act retaliation claim). The latter two steps in the burden-shifting framework for retaliation claims are identical to the latter two steps for discrimination claims. *Id*. (citing *Burdine*, 450 U.S. at 253). Nonetheless, for both discrimination and retaliation claims, "[t]he ultimate burden of persuasion remains at all times with the plaintiff." *Id*.

To meet her *prima facie* burden with respect to the adverse employment action element, Plaintiff must designate evidence "that she suffered a *materially adverse* change in the terms or conditions of her employment because of her employer's

8

conduct." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (quoting *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 885 (7th Cir. 1989)) (emphasis in original). Such changes include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), but do not include "a mere inconvenience or alteration of job responsibilities." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (quoting *Kocsis*, 97 F.3d at 886).

### C. Scope of Claims

In her Complaint, Plaintiff alleged that the "actions taken by Frazee and Crawford [were] severe, per[v]asive and hostile predicated on her known disability," Doc. #1, ¶ 16, PAGEID #3, and that she "notified Defendant that she was retiring . . . due to Defendant's hostile work environment." *Id.*, ¶ 22, PAGEID #4. Also, the EEOC decision analyzed the hostile work environment component of Plaintiff's EEOC complaint. Doc. #1-1, PAGEID #8, 13-14. However, in her Complaint, Plaintiff only brought claims of discrimination and retaliation, which "are different in kind from a hostile work environment claim." *Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009) (internal quotation marks and citation omitted). Moreover, Plaintiff's memorandum in opposition to Defendant's motion, Doc. #17, only addresses claims of discrimination and retaliation. As there is no hostile work environment claim before the Court, the question of whether Frazee and Crawford's actions constituted harassment is relevant only insofar as those actions may have constituted or contributed to disability discrimination or retaliation suffered by Plaintiff.

9

As discussed in detail below, Plaintiff never filed an original or amended complaint with the EEOC regarding her alleged constructive discharge. Nor could the EEOC's investigation, which was concluded prior to Plaintiff's retirement, reasonably have encompassed a claim of constructive discharge. Thus, the Court is presently without jurisdiction to review Plaintiff's constructive discharge allegations, and to the extent that Plaintiff is arguing that a hostile work environment caused her constructive discharge, the Court may not evaluate those arguments.

### III. ANALYSIS

#### A. Court Presently Without Jurisdiction to Evaluate Constructive Discharge Claim

A significant portion of Plaintiff's Complaint and memorandum in opposition to Defendant's motion for summary judgment is devoted to her claim that Crawford and Frazee's discrimination created an objectively intolerable working environment. Plaintiff alleges that her retirement on March 28, 2014, was a constructive discharge from her position, and that the alleged constructive discharge is an adverse employment action upon which her claims are based. Doc. #1, ¶¶ 17, 22, PAGEID #3-4; Doc. #17, PAGEID #193-94 (citing *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002); *Johnson v. Shalala*, 991 F.2d 126, 132 (4th Cir. 1993)).

Claims brought under the Rehabilitation Act must be limited "to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Farmer v. ARA Servs., Inc.*, 660 F.2d 1096, 1106 (6th Cir. 1981). At the time Plaintiff filed her complaint with the EEOC, she was still employed by Defendant, and there is no record of Plaintiff amending her complaint or filing a new charge after she was allegedly

10

forced to retire. Nor is there language in the EEOC's decision, Doc. #1-1, suggesting that its investigation encompassed an allegation of constructive discharge.

Without evidence that Plaintiff's allegation of constructive discharge reasonably grew out of her EEOC charge and the EEOC's investigation, the Court is without jurisdiction to hear Plaintiff's claims to the extent they are based on that alleged constructive discharge, and the Court must dismiss those portions of her claims. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). Given that "the party invoking federal jurisdiction has the burden to prove that jurisdiction," *Global Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015), the Court orders Plaintiff to show cause within twenty-one (21) days of this entry as to why her claims should not be dismissed with prejudice for lack of subject matter jurisdiction, to the extent that those claims arise out of her alleged constructive discharge. Defendant may file a response within fourteen (14) days thereafter.

### B. Plaintiff Cannot Make *Prima Facie* Claim of Disability Discrimination (Count I)

#### 1. April, 2010 and October 10, 2011, Incidents May Not Form Basis of Claim

##### a. April, 2010

As discussed above, the first instance of alleged discrimination detailed in Plaintiff's EEOC complaint took place in April, 2010, when Frazee allegedly told Plaintiff's coworker that he had to counsel Plaintiff about tardiness. Doc. #1-1, PAGEID #8. However, there is no evidence that Plaintiff was disabled until she was diagnosed with PTSD after the October, 2010, home invasion. Doc. #17, PAGEID #190. As she

was not under a disability in April, 2010, she cannot meet all elements of a Rehabilitation Act claim with respect to the April, 2010, incident. *DiCarlo*, 358 F.3d at 418. Therefore, the Court will not consider that incident in determining whether Plaintiff has made a *prima facie* showing of disability discrimination.

### b. October 10, 2011

In her memorandum in opposition, Plaintiff does not address her allegations made to the EEOC and in her Complaint that Crawford stated publicly that Plaintiff had a drinking problem, and that Frazee failed to stop Crawford from making such comments. Doc. #1, ¶ 15, PAGEID #3, Doc. #1-1, PAGEID #9. "This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, No. 13-1054, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases). Thus, Plaintiff is deemed to have abandoned her discrimination claim, to the extent that it arises out of the October 10, 2011, incidents, and the Court will not consider those incidents in evaluating Plaintiff's *prima facie* claim.[4]

---

[4] Moreover, there is no evidence before the Court that the alleged October 10, 2011, incidents were more than "mere inconveniences," which by themselves cannot constitute adverse employment actions. *Mitchell*, 389 F.3d at 182. Nor is there any evidence that the alleged incidents were connected with any of the adverse employment actions discussed below, all of which occurred at least one year after Crawford's alleged comments and Frazee's alleged failure to intervene. Thus, even if Plaintiff had not abandoned the allegations, the October 10, 2011, incidents could not serve as the basis for a *prima facie* discrimination claim.

**2.     Defendant did not Treat Plaintiff Differently from Non-Disabled Employees in Failing to Name Plaintiff as Crawford's Successor**

In September, 2013, Crawford announced her intention to retire. Doc. #23-4,

PAGEID #310. Plaintiff claims that Frazee had implicitly promised her that she would

succeed Crawford as the Dayton VA's Voluntary Service Specialist upon Crawford's

retirement. Doc. #17, PAGEID #197; Doc. #19-1, PAGEID #224. However, the

Voluntary Service Specialist position was never posted, and applications were never

accepted. When Plaintiff asked Frazee why the position had not been posted, Frazee

provided no answer. Doc. #17, PAGEID #196.

As discussed above, Plaintiff bears the initial burden of showing that "the position

remained open while the employer sought other applicants," *DiCarlo*, 358 F.3d at 418,

or that "similarly situated non-protected employees were treated more favorably."

*Jones*, 488 F.3d at 404. It is undisputed that Crawford's position was never open, and

that disabled and non-disabled employees alike were unable to apply for it. Therefore,

even though failure to promote may be considered an adverse employment action,

*Ellerth*, 524 U.S. at 761, any such failure in this instance may not form the basis of her

*prima facie* discrimination claim.


**3.     Plaintiff Suffered No Adverse Employment Action**

**a.     Arguments**

Aside from the alleged denial of a promotion to succeed Crawford as the

Voluntary Service Specialist, the Court can reasonably discern four adverse

employment actions that were: (a) raised by Plaintiff in her memorandum in opposition

to Defendant's motion for summary judgment; and (b) within the scope of the EEOC

investigation: 1) in October, 2012, having her job security threatened by Frazee and Crawford joking about getting Plaintiff's predecessor fired; 2) on or about November 2, 2012, having her job responsibilities reassigned to a non-disabled employee; 3) on or about November 2, 2012, Frazee threatening Plaintiff's job security while she was seeking medical treatment; and 4) in late November, 2012, Harris and Reed denying her request to be transferred to a different supervisor. Doc. #17, PAGEID #194-97. Defendant argues that none of those actions constitutes an adverse employment action, and that in the absence of any adverse action taken against Plaintiff, Defendant is entitled to summary judgment. Doc. #15, PAGEID #74-75; Doc. #19, PAGEID #216-18.

### b. October, 2012

Plaintiff claims that, in October, 2012, Frazee and Crawford "joked out loud that they were able to terminate" Plaintiff's predecessor, which Plaintiff alleges was part of a pattern of demeaning and threatening employees with disabilities. Doc. #17, PAGEID #195-96 (citing Doc. #23-1, PAGEID #262). Plaintiff claims that she felt threatened about her job security as a result. Doc. #1-1, PAGEID #9; Doc. #23-4, PAGEID #311. Even assuming that Frazee and Crawford's remarks were meant to threaten her job security, "it is settled in this [C]ircuit that a threat to discharge is not an adverse employment action." *Plautz v. Potter*, No. 04-6105, 156 F. App'x 812, 817 (6th Cir. 2005) (citing *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). Even if Plaintiff felt threatened or otherwise suffered emotional distress, the Court is unaware of any caselaw, in the Sixth Circuit or elsewhere, suggesting that emotional distress, by itself, can constitute an adverse employment action. *See, e.g.*, *Lentz v. City of Cleveland*,

14

410 F. Supp. 2d 673, 685 (N.D. Ohio 2006) (quoting *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997)) ("not everything that makes an employee unhappy is an actionable adverse action.").  The undisputed facts show that Plaintiff was not terminated, demoted or disciplined at or around the time Frazee and Crawford allegedly made those comments.  Absent evidence of any adverse action undertaken in connection with the comments, those comments were inconveniences that, as a matter of law, are not actionable.  *Mitchell*, 389 F.3d at 182.

### c.     November 2, 2012

The second and third potential adverse actions—reassignment of Plaintiff's work-related tasks, and threats to her job security while she was in the Emergency Room—are connected.  On or about November 2, 2012, Crawford allegedly reassigned Plaintiff's timekeeping duties to Spann.   Doc. #1-1, PAGEID #14.  Plaintiff claims that the "fear that another employee was gaining her responsibilities" triggered an acute stress reaction, and she sought treatment at the Dayton VA's Emergency Room.  *Id.* (citing Doc. #23-1, PAGEID #288).  While receiving treatment, Frazee allegedly sent her text messages, threatening to list her "as AWOL if she did not return to work."  *Id.* (citing Doc. #23-1, PAGEID #288-90).

There is no evidence in the record that Plaintiff was harmed by Crawford assigning Plaintiff's timekeeping duties to Spann.  The reassignment did not affect Plaintiff's pay grade or hours worked, and there is no evidence that Spann performing Plaintiff's timekeeping duties caused any significant changes to her other job duties.  Thus, Crawford's reassignment of the timekeeping duty was an "alteration of job responsibilities," which, as a matter of law, is not an adverse action.  *Mitchell*, 389 F.3d

at 182. With respect to the text messages, as discussed above, a threat to terminate is not an adverse action, *Plautz*, 156 F. App'x at 817, and there is no caselaw supporting the proposition that emotional distress may constitute an adverse action. Moreover, it is undisputed that Plaintiff was not terminated, demoted or disciplined as a result of leaving work to visit the Emergency Room. Doc. #15-2, ¶ 5, PAGEID #126. Therefore, the reassignment and text messages cannot constitute an adverse action unless Plaintiff suffered some resultant, employment-related harm. *Ellerth*, 524 U.S. at 760 (quotation omitted).

Plaintiff testified before the EEOC that she took FMLA leave from the time of her November 2, 2012, hospital visit until February, 2013, Doc. #23-4, PAGEID #310, and that "a lot of that time was without pay because I did not have enough [paid] leave for three months." *Id.*, PAGEID #313. Also, her attorney informed the EEOC investigator that Plaintiff "did not receive a bonus that [she] was supposed to receive" and that "one of her step increases was delayed." *Id*. While lost wages and step increases could constitute "significant change[s] in benefits," *Ellerth*, 524 U.S. at 761, those losses must have resulted from an action by Frazee or Crawford for Defendant to be liable under the Rehabilitation Act. *Id*. at 760.

Plaintiff does not allege that she was forced by Frazee or Crawford to take FMLA leave. *See Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007) (summary judgment on FMLA claim was reversed because there was genuine issue of fact as to whether employer forced healthy employee to take FMLA leave). Nor does Plaintiff claim that Frazee or Crawford interfered with or took any other inappropriate action against her with respect to her leave. In sum, there is no evidence that Plaintiff's lost

wages and delayed step increase were caused by any action taken by Frazee or Crawford. Thus, Frazee and Crawford's alleged actions are not adverse employment actions for the purposes of Plaintiff's *prima facie* discrimination claim.

### d.    Denial of Request to Transfer

Plaintiff claims that she sought to return to work in late November, 2012, under a different supervisor, but that Harris and Reed denied her request for a transfer. Plaintiff alleges that Harris and Reed's decision was an attempt to "force Plaintiff to return to this unhealthy environment," Doc. #17, PAGEID #195, and that as a result, Plaintiff was forced to continue on partially unpaid FMLA leave, rather than return to paid work, from late November, 2012, until February, 2013. Doc. #23-4, PAGEID #310, 313.

To the extent that Plaintiff is claiming that Defendant violated the Rehabilitation Act by failing to accommodate her request for a transfer, the Court notes that the Sixth Circuit is silent on whether such a failure may itself constitute an adverse employment action for a disability discrimination claim, and that other Circuits are divided on the issue. *Compare Shepard v. Green*, No. 08-03275-CV-S-JTM, 2011 WL 1611039, at *4 (W.D. Mo. Apr. 21, 2010) (citing *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 482 (8th Cir. 2007)) ("the Eighth Circuit . . . still appears to require plaintiffs pursuing a disability discrimination case based on a failure to reasonably accommodate to show that they have suffered a materially adverse employment action."), *with Williams v. Philadelphia Hous. Author. Police Dep't*, 380 F.3d, 751, 761 (3d Cir. 2004) ("[a]dverse employment decisions . . . include refusing to make reasonable accommodations for a plaintiff's disabilities.").

17

However, even if Plaintiff could properly raise such an argument in this Court, a disabled plaintiff alleging failure to accommodate "bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004) (internal quotation marks and citation omitted). Reassignment to a vacant position is a reasonable accommodation under the Rehabilitation Act. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 497 (7th Cir. 1996).[5] However, "an employee has the burden of identifying particular positions to which he could be reassigned based on his qualifications." *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 259 (6th Cir. 2000).

There is no evidence that, at the time she made the transfer request, Plaintiff identified a vacant job for which she was qualified. Nor has Plaintiff claimed that "she requested and was denied assistance in identifying jobs for which she was otherwise qualified." *Clark v. Whirlpool Corp.*, 252 F. Supp. 2d 528, 537 (N.D. Ohio 2003). Therefore, Defendant's denial of her transfer request is not an adverse employment action. As Plaintiff has failed to meet her *prima facie* burden to show circumstantial evidence of disability discrimination, Defendant's motion with respect to Count I is sustained, except to the extent that Plaintiff's claim arises from the alleged constructive discharge.[6]

---

[5] Although the *Gile* case involved a claim brought under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, "the Rehabilitation Act incorporates the ADA's definition of reasonable accommodation, which recognizes reassignment to a vacant position as a potential accommodation." *Gile*, 95 F.3d at 497.

[6] Because Plaintiff cannot meet her *prima facie* burden with respect to any of the incidents detailed in her EEOC charge or in her filings with this Court, the Court need not examine whether any similarly-situated, non-disabled employees were treated more favorably. *Jones*, 488 F.3d at 404.

### C. Retaliation (Count II)

Plaintiff claims that she suffered two adverse actions as a result of filing her EEOC complaint: (1) not being promoted to or getting the chance to apply for Crawford's position; and (2) being constructively discharged. Doc. #17, PAGEID #199. As discussed above, the Court is presently without jurisdiction to evaluate Plaintiff's claim with respect to the alleged constructive discharge. While failure to promote does constitute an adverse employment action, *Ellerth*, 524 U.S. at 761, the length of time between Plaintiff's protected activity and the alleged adverse action means that portion of her retaliation claim fails as a matter of law.

The date on which Plaintiff engaged in protected activity is undisputed: Plaintiff filed her EEOC complaint against Frazee and Crawford on March 6, 2013. Doc. #1-1, PAGEID #8. Similarly, it is undisputed Frazee and Crawford knew of Plaintiff's protected activity. Doc. #23-2, 23-3. However, there is no evidence before the Court identifying the decision-maker who elected not to post Crawford's position, or when that decision was made. Nor is there evidence that the unidentified decision-maker knew that Plaintiff had filed an EEOC complaint.

However, even if the Court were to assume that the decision-maker knew of Plaintiff's EEOC complaint at the time he or she decided not to post the position, or even that Frazee or Crawford made the decision not to post the position, the time gap between the protected activity and the adverse employment action is fatal to her claim. Crawford announced her retirement in September, 2013, and there is no evidence that Plaintiff could have succeeded Crawford or applied for her position prior to that time. Nor is there evidence that Frazee rescinded his alleged promise to promote Plaintiff prior to that time.

19

Thus, September, 2013, more than five months after Plaintiff filed her EEOC complaint, was the earliest possible time at which an adverse action may have occurred. The Sixth Circuit has held that, without additional evidence linking the protected activity and the adverse action, the fact that an adverse action occurred at least "four months after filing a discrimination claim is insufficient to support an interference [sic] of retaliation." *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986). Plaintiff has offered no evidence connecting her filing of the EEOC complaint with Defendant's allegedly retaliatory actions, and no trier of fact could reasonably infer such a causal connection. Defendant's motion for summary judgment must be sustained on Plaintiff's retaliation claim, to the extent that her claim arises from being unable to succeed Crawford or apply for her position.[7]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment, Doc. #15, is SUSTAINED IN PART and not ruled upon in part. Defendant's motion is SUSTAINED on Plaintiff's discrimination (Count I) and retaliation claims (Count II), except to the extent that those claims are based on Defendant's alleged constructive discharge of Plaintiff. Judgment shall ultimately enter in favor of Defendant and

---

[7] Plaintiff claims that Frisco failed to respond to her regarding a grievance that she had filed against Frazee, on an unspecified date, and "berated Plaintiff, glared at Plaintiff, and would not allow Plaintiff the opportunity to explain herself." Doc. #17, PAGEID #198-99; Doc. #23-1, PAGEID #269; Doc. #23-4, PAGEID #310. To the extent that Plaintiff is alleging that Frisco's behavior was part of a hostile work environment designed not to constructively discharge her, but, rather, to "deter a reasonable employee from complaining about discrimination," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), Plaintiff's retaliation claim still fails for two reasons. First, there is no evidence that Frisco knew that Plaintiff had filed an EEOC complaint. Second, Plaintiff admits that Frisco did not become her immediate supervisor until the end of 2013, or at least eight months after Plaintiff filed her EEOC complaint. Doc. #23-1, PAGEID #267. Thus, any hostile work environment allegations against Frisco fail as a matter of law due to the holding in *Cooper*. 795 F.2d at 1272.

against Plaintiff on Counts I and II, except to the extent that those claims arise from an

alleged constructive discharge.  Plaintiff is ORDERED to show cause within twenty-

one (21) days of this entry as to why the Court should not dismiss with prejudice the

remainder of her claims, based upon alleged constructive discharge, for lack of

subject matter jurisdiction.  Defendant may file a memorandum in opposition within

fourteen (14) days thereafter.


Date: June 15, 2016                              _____
                                                 WALTER H. RICE
                                                 UNITED STATES DISTRICT JUDGE